UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NORFOLK SOUTHERN RAILWAY COMPANY, | ) ) ) | CASE NO. 4:13CV00313 |
| Plaintiff, | ) ) | JUDGE JOHN R. ADAMS |
| vs. | ) ) ) | **ORDER AND DECISION** |
| ALLIED ERECTING & DISMANTLING CO., INC., | ) ) ) ) | |
| Defendant. | | |

This matter is before the Court on Plaintiff Norfolk Southern Railway Company's Motion for Partial Summary Judgment. Doc. 42. The Court finds that genuine issues of material fact exist, precluding judgment as a matter of law. As such, for the following reasons, Plaintiff's motion is DENIED.[1]

**I.     FACTS AND PROCEDURAL HISTORY**

These facts are not in dispute:

A.    Original agreements between Conrail and Defendant

In 1994, Consolidated Rail Corporation ("Conrail") owned certain railroad property in Youngstown, Ohio, known as the Canfield Branch. Doc. 42 at 3; Doc. 69 at 2. Conrail also owned property nearby called the Haselton Yard facility (also referred to at times as "Hazelton Yard"). Doc. 42 at 3. Conrail agreed to sell the Canfield Branch to Defendant Allied Erecting & Dismantling Co., Inc. Doc. 42 at 3; Doc. 69 at 2. To complete the transaction, Conrail and Defendant executed four separate documents:

---

[1] The Court notes that Defendant filed a brief in opposition to Plaintiff's motion for summary judgment, arguing that the contract language is ambiguous and the ambiguity precludes summary judgment. Defendant also filed a motion awkwardly titled "Motion for Order Declaring that the Contracts are Ambiguous." The arguments are repeated from Defendant's opposition brief, and therefore, Defendant's argument will be addressed herein. The motion for an order declaring the contracts ambiguous is denied.

1

1. Temporary License Agreement dated July 22, 1994;

2. Agreement of Sale executed on July 22, 1994;

3. Agreement executed on October 10, 1994 and recorded August 24, 1995 (hereinafter "First Agreement"); and

4. Agreement Conveying the Deed executed October 12, 1994 and recorded January 13, 1995 (hereinafter "Second Agreement").

Doc. 69; Doc. 1-4; Doc. 42-2. The First Agreement and Second Agreement appear to use much of the same language but do not incorporate one another and have different terms and requirements. For example, the First Agreement reads:

> [Defendant] will convey to [Conrail] a permanent, unconditional, exclusive easement for the purpose of a roadway for vehicular and pedestrian traffic to provide access from Poland Avenue to [Conrail's] adjoining and adjacent property ("New Roadway"), and [Defendant] shall construct the New Roadway at [Defendant's] sole cost and expense. The conveyance of the said easement shall be completed within ten (10) years of the date of this Agreement, as evidenced by a recordable document, otherwise in the absences [sic] of such recordable document this Agreement shall remain in effect. The location and bounds of the said easement and the design of the New Roadway shall be subject to the prior approval of [Conrail]. The New Roadway shall be sufficient for [Conrail's] intended use…and no action will be taken to restrict [Conrail's] use of the roadway that currently runs from Poland Avenue to [Conrail's] Hazelton Yard ("Current Roadway") until [Conrail] has approved the New Roadway as constructed….

Doc. 1-4 at 1.

Without reference to the existence of a prior or other related contract, the Second Agreement then states:

> EXCEPTING AND RESERVING, thereout [sic] and therefrom and unto [Conrail], a permanent, unconditional and exclusive easement on, over, across and through the Premises for vehicular and pedestrian roadway access purposes so that [Conrail] may have continuous ingress, egress and regress rights from Poland Avenue to [Conrail's] Haselton Yard property; the rights shall expire upon [Defendant] providing [Conrail] a new constructed roadway across property of [Defendant] and when said roadway is constructed [Conrail] shall release such right.

Doc. 42-2 at 2. A new roadway has never been constructed on the Canfield Branch property.

  B. <u>Plaintiff Norfolk Southern Railway Company and Defendant</u>

In 2007, Plaintiff Norfolk Southern Railway Company became the successor in interest to all rights, title and interest in the Canfield Branch and the Haselton Yard as previously owned by Conrail. Doc. 42-1. Thus, Plaintiff became the successor in interest to Conrail's rights and benefits under the First and Second Agreements.

In interpreting the contracts, a dispute now exists between the parties as to:

1. Which specific road constitutes the "Current Roadway" and "easement" under the First and Second Agreements?

2. Was Defendant required to build the "New Roadway"?

3. If so, was Defendant required to build the "New Roadway" within 10 years of the execution of the First Agreement?

To resolve this ongoing dispute, Plaintiff filed a Complaint in 2013 alleging breach of contract and asking for money damages and specific performance, while requesting declaratory judgment as to Defendant's obligations under the agreements.

## II. LEGAL STANDARD

A party seeking summary judgment must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is material if it is one that might affect the outcome of the suit under governing law. *Anderson v.*

3

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary burdens.  *Id*. at 252.  Further, the Court must view a summary judgment motion "in the light most favorable to the party opposing the motion."  *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  The pivotal question in deciding a motion for summary judgment is whether a reasonable fact finder *could* make a finding in favor of either party.  *See Anderson* 477 U.S. at 250 ("The inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.").

The initial burden of showing the absence of any "genuine issue" belongs to the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury" or other fact-finder at trial.  *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). A party opposing summary judgment must show that there are facts genuinely in dispute, and must do so by citing to the record. Fed. R. Civ. P. 56(c)(1)(a).

### III.   LEGAL ANALYSIS

#### A.  The First and Second Agreements are ambiguous.

The Court will address the parties' first dispute regarding which road constitutes the "Current Roadway" and "easement" used in the First and Second Agreements.  The First Agreement reads:  "…[N]o action will be taken to restrict [Conrail, hereinafter "Plaintiff's"] use of the roadway that currently runs from Poland Avenue to [Plaintiff's] Hazelton Yard ("Current Roadway") until [Plaintiff] has approved the New Roadway as constructed."  Doc. 1-4 at 1.

4

Plaintiff argues that "Current Roadway" refers to the slag road crossing the Canfield property, while Defendant argues that it refers to a nearby dirt road.

To resolve the dispute, the Court looks to the "plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement." *Triad Realty, L.L.C. v. SVG Mgmt., L.L.C.*, 2014 WL 2156775 at *3, 2014 – Ohio - 2157.  Here, at no point does the First Agreement describe the location, coordinates, or metes and bounds of the "Current Roadway."  It does not incorporate a picture, graph, or other visual or technical description identifying which roadway is the "Current Roadway."  Since there are two roads that are possible, this term is ambiguous.  Because it relates directly to Plaintiff's claims that Defendant has unlawfully used the "Current Roadway," the term is certainly material to the First Agreement.

Likewise, the Second Agreement generally states that Defendant shall reserve for Plaintiff "a permanent, unconditional and exclusive easement on, over, across and through the Premises for vehicular and pedestrian roadway access….so that [Plaintiff] may have continuous ingress, egress and regress rights from Poland Avenue to [Plaintiff's] Haselton Yard property…." Doc. 42-2 at 2.  Again, the Second Agreement fails to define or describe the location of the easement within the contract.  It is impossible to determine from the four corners of the agreement, where the easement was located.  As such, the Second Agreement is ambiguous as to the meaning of easement.

### B. Extrinsic evidence does not resolve the ambiguity.

Since the First and Second Agreements are ambiguous as to the meaning of "Current Roadway" or "easement," this Court looks to extrinsic evidence to clarify the ambiguity. The Sixth Circuit in *United Rentals (North America), Inc. v. Keizer* held that, when a contract is ambiguous, a court is permitted to look at extrinsic evidence, as long as it supports only one of

the conflicting interpretations. *United Rentals (North America), Inc. v. Keizer*, 355 F.3d 399, 410 (6th Cir. 2004).

Here, the extrinsic evidence dictates that either party's argument could be interpreted as correct, given the existence of two roads. The parties agree that they both have been using the slag road. They admit that Plaintiff has been paying to re-pave and maintain the slag road as well. The parties have been using this same road for seven years.

From Plaintiff's argument, this slag road is the only roadway that is practically available, since the dirt road is only "muck" and arguably difficult to pass through. Plaintiff asserts that this slag road is the same road that has always been used by Plaintiff (or Conrail) and was in use at the time Conrail originally sold the property to Defendant. Therefore, Plaintiff asserts that the slag road is the "Current Roadway" and general "easement" referred to in the First and Second Agreements.

To the contrary, Defendant argues that Plaintiff's easement is actually the dirt path, which parallels the railway. Defendant argues that it has always used the slag road for transporting its heavy industrial equipment. Since 1994, Conrail did not dispute its use – which would have been contrary to Plaintiff's argument for an exclusive easement. Likewise, after the Plaintiff acquired the property, both parties used the road for six years until Plaintiff filed the underlying lawsuit in 2013. Furthermore, Defendant argues that it has a superior right to use the slag road from an easement allegedly created in 1872 by a former owner.[2]

Since the agreements could be interpreted to support either party's argument, the extrinsic evidence in this case does not resolve the ambiguity. As such, a genuine issue of

---

[2] The Court notes that Defendant is silent as to why it inexplicably allowed Plaintiff to maintain the slag road, if Defendant claims a superior right to the roadway. However, the cost of upkeep and maintenance and any benefit or enrichment Defendant may have received therefrom is not before this Court in the underlying motion for summary judgment.

material fact exists as to the meaning and location of "Current Roadway" and "easement" from the First and Second Agreements.

Since a genuine issue of material fact exists, the Court will not conduct a further analysis of the remaining issues, as these efforts would be moot. Given all of this, the Court DENIES Plaintiff's motion for summary judgment.

## IV. CONCLUSION

Based upon the reasons stated herein, a genuine issue of material fact exists and therefore Plaintiffs' motion for summary judgment is DENIED.

IT IS SO ORDERED.


DATE: September 30, 2014         */s/ John R. Adams*_____
                                 Judge John R. Adams
                                 UNITED STATES DISTRICT COURT